```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
UNITED STATES OF AMERICA,               :
                                        :
                 Plaintiff,             :
                                        :   S9 96 Cr. 126 (JFK)
           -against-                    :   OPINION & ORDER
                                        :
                                        :
ANDREW BENNETT,                         :
                                        :
                 Defendant.             :
---------------------------------------X
```

**JOHN F. KEENAN, United States District Judge:**


**APPEARANCES**

For the Government:

           MICHAEL J. GARCIA
           United States Attorney
           Southern District of New York
           One Saint Andrew's Plaza
           New York, New York 10007
                Of Counsel: AUSA Avi Weitzman


For the Defendant:

           ALAN NELSON, ESQ.
           3000 Marcus Avenue, Suite 1E5
           Lake Success, NY 11042


**John F. Keenan, United States District Judge.**

1

**JOHN F. KEENAN, United States District Judge:**

Before the Court are Defendant's motions (i) to dismiss both charges against him on statute of limitations grounds; (ii) to dismiss the charge of conspiracy to commit murder on the ground of facial insufficiency; and (iii) to compel the Government to provide the defense with a bill of particulars. For the following reasons, Defendant's motions are denied in their entirety.

## BACKGROUND

The instant 116-count indictment, which is the ninth superseding indictment filed in this case (the "S9 Indictment"), was returned on January 21, 1997.  Defendant Andrew Bennett ("Bennett" or "Defendant") is charged in two counts:  Count Eight, which charges Bennett with conspiracy to commit murder in furtherance of a racketeering enterprise, in violation of 18 U.S.C. § 1959(a)); and Count Eighty-Eight, which charges him with possession of a firearm in furtherance of the conspiracy, in violation of 18 U.S.C. § 924(c).  The charges stem from the alleged assistance that Bennett rendered to the infamous Velasquez Organization, a drug syndicate headed by Ramon Velasquez that operated in the greater New York City area in the 1980s and 1990s.  Specifically, the S9 Indictment alleges that "[i]n or about April 1991" Bennett and others conspired to murder "Victim #1."  "Victim #1" was later identified in discovery as

John Sutter, a criminal defense attorney who had represented an associate of Ramon Velasquez in a narcotics prosecution. Dissatisfied with Sutter's representation of his associate, Velasquez ordered the lawyer's assassination.  After several failed attempts on Sutter's life, Velasquez allegedly hired Bennett to assassinate Sutter in exchange for a cash payment. Bennett, in turn, recruited another individual, Henry Barrington, to help with the job.  Bennett and Barrington, who was armed with a loaded gun, allegedly went to Sutter's office with the intention of killing Sutter but did not ultimately do so.[1]

        The original indictment in this case was returned, sealed, on February 26, 1996.  Bennett was not named in the original indictment.  On April 10, 1996, a grand jury returned a sealed first superseding indictment (the "S1 Indictment"), in which Bennett was named as a defendant in the counts that related to the conspiracy to murder Sutter.  The charges against Bennett in the S1 Indictment are identical to the charges in the S9 Indictment.  The S1 Indictment was unsealed on June 25, 1996, and Bennett was arrested on that same day.  On June 26, 1996, Bennett was released on bail, after posting a $100,000 bond.  In September 1996, while on bail, Bennett fled this jurisdiction and

---

        [1]According to an affidavit submitted by an investigator for the United States Attorneys' Office, "Barrington did not ultimately shoot Sutter because, according to Barrington, Sutter became suspicious and began asking too many questions." (Aff. of Billy Ralat ¶ 8.)

remained at large for over ten years.

In December 2006, Bennett was apprehended in Jamaica and extradited to the United States.

**DISCUSSION**

*(i) Statute of Limitations*

Defendant moves, pursuant to Rule 12(b)(2) of the Federal Rules of Criminal Procedure, to dismiss both counts against him contained in the S9 Indictment on the ground that they are time-barred by the five-year statute of limitations.

An indictment in a non-capital case must be "found" "within five years . . . after such offense shall have been committed." 18 U.S.C. § 3282(a).  An indictment is "found" when it has been returned by a grand jury and filed.  United States v. Srulowitz, 819 F.2d 37, 40 (2d Cir. 1987).  After an indictment is filed, the statute of limitations is tolled regarding the charges contained in the indictment.  United States v. Ben Zvi, 242 F.3d 89, 98 (2d Cir. 2001).

At the outset, the Court must determine whether the S9 Indictment "relates back" to the S1 Indictment.  For statute of limitations purposes, a superseding indictment is deemed to "relate back" to the original indictment as long as the superseding indictment does not materially alter the charges, see United States v. Salmonese, 352 F.3d 608, 622 (2d Cir. 2003), and as long as the delay between indictments does not substantially prejudice the defendant.  United States v. Panebianco, 543 F.2d

4

447, 454 (2d Cir. 1976).  Here, there is no dispute that the S9
Indictment "relates back" to the S1 Indictment.  The charges
relating to Bennett in the S9 Indictment are identical to the
charges contained in the S1 Indictment; thus, there has been no
material alteration of the charges.  Further, the defense has not
shown any prejudice that Bennett suffered as a result of the
delay between the filing of the S1 and S9 Indictments.  Thus, the
S9 Indictment "relates back" to the S1 Indictment.

        Next, I must determine whether the date the S1
Indictment was "found", for statute of limitations purposes, was
the date of its return or the date of its unsealing.  The defense
asserts that the date the S1 Indictment should be deemed "found"
is June 25, 1996, the date of its unsealing.  "When, as here, a
defendant challenges the decision to seal an indictment after it
has been unsealed, the burden is on the Government to establish
legitimate reasons for sealing the indictment.  If the Government
is unable to justify the sealing of the indictment, the
expiration of the limitations period prior to unsealing would
result in dismissal of the indictment, as it would in any case in
which an indictment were untimely." United States v. Gigante, 436
F. Supp. 2d 647, 654-55 (S.D.N.Y. 2006) (citations omitted).
One "obvious purpose" for sealing an indictment "'is to prevent
the requirement of an indictment from serving as a public notice
that would enable the defendant to avoid arrest.'" United States

v. Davis, 598 F. Supp. 453, 455 (S.D.N.Y. 1984) (quoting United States v. Muse, 633 F.2d 1041, 1043 (2d Cir. 1980)).  Further, an indictment may be deemed to be "found" on the date of its unsealing if the defendant can show that he suffered "substantial actual prejudice occurring between the date of sealing and the date of unsealing." United States v. Srulowitz, 819 F.2d at 40.

The defense argues that the Government has failed to show a legitimate purpose for the sealing of the indictment.  The Government contends, and the Court agrees, that a legitimate purpose underlay its decision to seal the S1 Indictment, namely that of preventing Bennett from learning about the serious criminal charges pending against him and fleeing the jurisdiction.  The Government's fear that Bennett would attempt to avoid prosecution was amply born out when the defendant, while released on bail in September 1996, absconded and then remained at large for over a decade.  Moreover, the defense has failed to show that Bennett suffered substantial actual prejudice as a result of the delay between the return of the sealed indictment and its unsealing.  Accordingly, I find that the date the S1 Indictment was "found", for calculation of the limitations period, was April 10, 1996.

Having determined the date on which the indictment was "found", I next must determine whether the indictment, on its face, sufficiently alleges that the charged conspiracy occurred

6

within the applicable statute of limitations period, that is,
within five years prior to April 10, 1996.  Here, the indictment
simply alleges that the conspiracy occurred "[i]n or about April
1991."  The indictment does not state when the conspiracy ended
and does not allege any overt act undertaken in furtherance of
the conspiracy.

        "When a conspiracy requires proof of an overt act, the
government satisfies the statute of limitations . . . if it
establishes that the conspiracy operated within the five-year
period preceding the indictment, and a conspirator knowingly
committed at least one overt act in furtherance of the scheme
within that period."  <u>United States v. Salmonese</u>, 352 F.3d 608,
614 (2d Cir. 2003).  When, however, the charged conspiracy "does
not require an overt act to be pleaded or proven, the conspiracy
is properly charged if it has not terminated more than five years
prior to the filing of the indictment." <u>United States v.</u>
<u>Martinez</u>, No. S1 94 Cr. 219 (RPP), 1995 U.S. Dist. LEXIS 155, at
*6 (S.D.N.Y. Jan. 12, 1995) (citing <u>United States v. Grammatikos</u>,
633 F.2d 1013, 1023 (2d Cir. 1980)).  The statute under which the
conspiracy is charged in this case, 18 U.S.C. § 1959(a)(5), does
not contain an overt act requirement.  Further, the Second
Circuit has held that an indictment charging a violation of
section 1959 is not required to allege any overt act in
furtherance of the conspiracy.  See <u>United States v. Carrillo</u>, 229

7

F.3d 177, 181 (2d Cir. 2000); <u>United States v. Orena</u>, 32 F.3d
704, 714 (2d Cir. 1994).  Thus, to satisfy statute of limitations
requirements, the indictment in this case need only contain
allegations sufficient for the Government to be able to establish
that the charged conspiracy continued after April 10, 1991.

        The dates charged in the indictment are sufficiently
close in time to the limitations period to permit the Government
to offer proof that the charged conspiracy continued into the
limitations period.  Although the Government has alleged only
that the conspiracy existed "[i]n or about April 1991," this does
not foreclose the Government from proving at trial that the
conspiracy specifically lasted beyond April 10, 1991.[2]  <u>See</u>
<u>Grammatikos</u>, 633 F.2d at 1023 (holding that, where indictment was
found on April 6, 1979 and indictment alleged only that
conspiracy continued until "approximately April, 1974,"
government was not precluded by language of indictment from
proving at trial that charged conspiracy continued well into
five-year limitations period); <u>see also</u> <u>United States v. Coia</u>,
719 F.2d 1120, 1124-25 (11th Cir. 1983) ("Since both the
conspiracy itself and its enduring nature may be proven
circumstantially, any indictment alleging facts in the time
period close to the commencement of the limitations period could

_____

        [2] The Government has represented in its opposition papers and
at oral argument, in fact, that it intends to offer proof at
trial that the conspiracy lasted beyond April 10, 1991.

support an inference that the conspiracy continued into the limitations period.") (citations omitted).  Here, the indictment alleges the existence of a conspiracy during a time that is very close to the limitations period.  Thus, the indictment is facially sufficient for statute of limitations purposes.

Further, as the Government correctly observes, it is premature for the Court to find on a Rule 12(b) motion that, as a matter of law, the charged conspiracy terminated prior to April 10, 1991.  A conspiracy charged under a statute that has no overt act requirement is deemed "terminated when, in a broad sense, its objectives have either been accomplished or abandoned. . . ." United States v. Persico, 832 F.2d 705, 713 (2d Cir. 1987) (internal quotation marks and citation omitted).  "[D]etermination of when a conspiracy ends requires scrutiny of all of the pertinent facts in each case, including the scope of the conspiratorial agreement." United States v. Stroh, No. 3 96 Cr. 129, 2000 U.S. Dist LEXIS, at *12 (D. Conn. Nov. 3, 2000) (citing United States v. Roshko, 969 F.2d 1, 7 (2d Cir. 1992)).  Under Rule 12(b), a "party may raise by pretrial motion any defense, objection, or request which is capable of determination without the trial of a general issue." Fed. R. Crim. P. 12(b)(2).  The duration of the charged conspiracy is not "capable of determination" solely with reference to the indictment and the facts currently before the Court.  Whether the conspiracy with

9

which Bennett is charged continued after April 10, 1991 and thus into the limitations period is a matter of fact to be determined at trial.  See, e.g., United States v. Reynolds, No. 3 97 Cr. 232, 1999 U.S. Dist. LEXIS 10519, at *8-9 (D. Conn. Jan. 22, 1999) ("That the government may not be able to prove at trial that the defendant . . . was a member of the charged conspiracy within the five years preceding the indictment is an evidentiary matter."); United States v. Almonte, No. 98 Cr. 666 (JFK), 1998 U.S. Dist. LEXIS 17569 (S.D.N.Y. Nov. 6, 1998).

Accordingly, Defendant's motion to dismiss the indictment is denied.  If, at trial, the Government fails to prove that the conspiracy continued past April 10, 1991, the defense may renew its motion. See United States v. Berger, 22 F. Supp. 2d 145, 153 (S.D.N.Y. 1998); United States v. Persico, 621 F. Supp. 842, 879 (S.D.N.Y. 1985).

*(ii) Facial Sufficiency of Conspiracy Charge*

The defense asserts, without citing any authority, that the conspiracy charge is facially insufficient because the S9 Indictment fails to allege that an overt act was undertaken in furtherance of the charged conspiracy.  As noted above, an indictment charging a conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5) does not need to allege an overt act.  See Carrillo, 229 F.3d at 181; Orena, 32

10

F.3d at 714.  Thus, the absence of the allegation of an overt act does not render the conspiracy charge defective as a matter of law.  The defense's motion to dismiss the conspiracy charge on the ground of facial insufficiency is therefore denied.

*(iii) Bill of Particulars*

Citing Federal Rule of Criminal Procedure 7(f), the defense requests that the Government provide particulars relating to the charges against Bennett, including the time and the place(s) that the conspiracy was formed and that meetings between co-conspirators occurred; the identity of any uncharged co-conspirators; the exact dates of the charged conspiracy; a description of Bennett's overt acts in furtherance of the conspiracy; a description of the firearm allegedly used in furtherance of the conspiracy; and specification of whether the Government possesses the firearm and whether Bennett is alleged to have been in constructive or actual possession of the gun.

Under Rule 7(f) of the Federal Rules of Criminal Procedure, a defendant may obtain a bill of particulars "in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense . . . . Generally, if the information sought by defendant

is provided in the indictment or in some acceptable alternate
form, no bill of particulars is required."   United States v.
Panza, 750 F.2d 1141, 1148 (2d Cir. 1984).  A "bill of
particulars should be required only where the charges of the
indictment are so general that they do not advise the defendant
of the specific acts of which he is accused." United States v.
Torres, 901 F.2d 205, 234 (2d Cir. 1990) (internal quotation
marks and citation omitted). "Acquisition of evidentiary detail
is not the function of a bill of particulars." Id. at 234
(citation omitted).  The Second Circuit has "consistently
sustained indictments which track the language of a statute and,
in addition, do little more than state time and place in
approximate terms." United States v. Salazar, 485 F.2d 1272, 1277
(2d Cir. 1973) (citations omitted).  In deciding a motion for a
bill of particulars "[t]he important question is whether the
information sought is necessary, not whether it is helpful."
United States v. Facciolo, 753 F. Supp. 449, 451 (S.D.N.Y. 1990).
"So long as an indictment and discovery sufficiently enable a
defendant to avoid surprise and prepare for trial, a Bill of
Particulars is not warranted." United States v. Clarke, No. 05
Cr. 017 (DAB), 2006 U.S. Dist. LEXIS 89625, at *17-20 (S.D.N.Y.
Dec. 7, 2006).  The decision whether to grant a bill of
particulars rests within the sound discretion of the trial court.
Panza, 750 F.2d at 1148.

Here, the S9 Indictment tracks the language of the relevant statutes and states the approximate time (April, 1991) and place (the Southern District of New York) of the occurrence of the conspiracy and gun possession charges.  In addition, the defense has been provided with discovery, consisting of affidavits submitted by the Government in connection with Bennett's extradition proceedings, that will enable Defendant to prepare for trial.  The affidavit of the United States Attorneys' Office's investigator, Billy Ralat, which was supplied to the Court as an exhibit to the Government's opposition to the instant motion, contains significant details regarding the charged conspiracy and gun possession.  As the Government points out, Ralat's affidavit and other discovery that has been disclosed to the defense provide descriptions of "the defendant's co-conspirators, the intended victim, the Velasquez Organization's motive for the murder, the location where the murder was to occur, and the specific roles each co-conspirator played." (Gov't Mem. at 18-19.)  In sum, Bennett has been supplied with sufficient information to allow him to prepare for trial and prevent unfair surprise.  The defense has shown no need, within the meaning of Rule 7(f), for the information that it requests.  Accordingly, the defense's motion for a bill of particulars is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the charges against him as time-barred is DENIED. Defendant's motion to dismiss the conspiracy charge as facially insufficient is DENIED.  Defendant's request for a bill of particulars is DENIED.


**SO ORDERED.**

**Dated: New York, New York**
        August  2, 2007


                                    JOHN F. KEENAN
                            United States District Judge